35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Coy Ray PHELPS, Defendant-Appellant.
 No. 92-10534.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 10, 1994.*
Decided Aug. 30, 1994.
 
 1
 Before: FLETCHER, HALL and WIGGINS, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Coy Ray Phelps appeals the district court's determination that he should not be released from the care and treatment of the Attorney General pursuant to 18 U.S.C. Sec. 4243 on the ground that he continued to suffer from a mental illness. Phelps contends that the Supreme Court's decision in Foucha v. Louisiana, 112 S.Ct. 1780 (1992), renders Sec. 4243 unconstitutional. We affirm.
 
 
 4
 * On July 31, 1986, Phelps was found not guilty by reason of insanity on charges of possessing, manufacturing, and placing pipe bombs in five San Francisco locations.[1] Phelps was committed to the custody of the Attorney General pursuant to 18 U.S.C. Sec. 4243(e) and was placed in the Federal Medical Center in Springfield ("FMC Springfield"). Phelps was subsequently transferred to the Federal Medical Facility in Rochester ("FMC Rochester").
 
 
 5
 In 1988 and 1989, Phelps moved for release under 18 U.S.C. Sec. 4247(h). On both occasions, the district court held hearings to determine the appropriateness of the release. See 18 U.S.C. Sec. 4243(f). At these hearings, Phelps had "the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18 U.S.C. Sec. 4243(e). At both hearings, the district court found that Phelps failed to make such a showing and denied Phelps's requests to be released.
 
 
 6
 On appeal from the court's order in the 1989 hearing, Phelps contended that Sec. 4243(d) is unconstitutional because it places the burden of proof in release hearings on the insanity acquittee. We rejected this challenge, ruling that Sec. 4243(d) is not unconstitutional. United States v. Phelps, 955 F.2d 1258 (9th Cir.), cert. denied, 112 S.Ct. 2977 (1992).
 
 
 7
 On June 12, 1992, Phelps again moved for release pursuant to 18 U.S.C. Sec. 4247(h). At the hearing before the district court, Phelps argued (1) that after the Supreme Court decision in Foucha v. Louisiana, Sec. 4243(d) is no longer constitutional; and (2) that he no longer suffers from mental illness. After conducting a hearing, the district court ruled against Phelps on both issues. Phelps timely appealed. We have jurisdiction.
 
 
 8
 We review a challenge to the constitutionality of a statute de novo. Phelps, 955 F.2d at 1267. The district court's factual findings are reviewed for clear error. Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990).
 
 II
 
 9
 On appeal, Phelps contends that the Supreme Court decision in Foucha v. Louisiana renders Sec. 4243(d) unconstitutional. We disagree.
 
 
 10
 In Foucha, the Supreme Court considered a Louisiana statute that allowed the continued confinement of an insanity acquittee on the grounds that he was dangerous to himself and to others, even though a hospital review committee had determined that the individual was no longer mentally ill. The insanity acquittee did have an antisocial personality that sometimes led to aggressive behavior, but this disorder did not qualify as a mental illness. The Court held that the statute violated due process, noting that " '[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous,' i.e. the acquittee may be held as long as he is both mentally ill and dangerous, but no longer." 112 S.Ct. at 1784 (quoting Jones v. United States, 463 U.S. 354, 365 (1983) (internal citations omitted)). Thus, the Due Process Clause permits the government to confine an insanity acquittee " 'until such time as he has regained his sanity or is no longer a danger to himself or society.' " Id. at 1784 (quoting Jones, 463 U.S. at 368).
 
 
 11
 Phelps contends that Sec. 4243 is unconstitutional because it requires an insanity acquittee to prove both (1) that he is no longer dangerous; and (2) that he is not mentally ill. This contention is without merit: Sec. 4243 clearly provides that an insanity acquittee must prove only "that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18 U.S.C. Sec. 4243(d) (emphasis added). Thus, an insanity acquittee's continued detention requires that the acquittee present a danger to society that is tied to his mental illness. Mere dangerousness alone, without a present mental illness, is an insufficient basis for continuing detention under Sec. 4243. For this reason, Sec. 4243(d) is not unconstitutional under Foucha.
 
 III
 
 12
 Phelps also argues that (1) the district court declined to order his release solely on the grounds that he is dangerous; and (2) that he no longer has a mental illness.
 
 
 13
 With respect to the first proposition, the district court clearly found that Phelps continues to suffer from mental illness and that his release would create a substantial risk of bodily injury to others due to this persistent mental illness. Phelps's argument is thus factually inaccurate.
 
 
 14
 With respect to Phelps's second claim that he no longer suffers from mental illness, the district court's finding is not clearly erroneous. The record contains an annual report from FMC Rochester, in which Dr. Steven Norton, a staff psychologist, reports that Phelps had shown an increase in the effects of his mental illness over the last few years and that he suffers from Delusional Disorder, Persecutory Type; Pedophilia; and Anti-Social Personality Disorder. An addendum to the report states that Phelps has a Paranoid Personality Disorder with Schizoid and Anti-Social Features. Both the annual report and the addendum conclude that Phelps suffers from a delusional belief system regarding African-Americans, Jews, and other minorities and that Phelps had conceded that he was dangerous to those who disagreed with his belief system. The addendum noted:
 
 
 15
 It is the opinion of the undersigned that Mr. Phelps is dangerous due to symptoms of mental illness. Specifically, he appears to have a mental illness that incorporates extreme delusional, religious ideation and includes a sense of persecution and fear of a variety of minority groups. This fear and persecution is to such an extreme that Mr. Phelps feels it necessary to forcibly remove these threats. Mr. Phelps strongly advocates the destruction of these minority groups and freely notes that he will be involved in actions to achieve this destruction. As such, Mr. Phelps is not only at risk to engage in these behaviors himself, but certainly will encourage others to engage in such behavior and will advocate acts of violence, based on his delusional, religious, belief system. Mr. Phelps will have difficulty complying with any type of supervised release. Mr. Phelps is noncompliant with treatment recommendations while in the institution, and there is little indication to support the idea that he would comply with treatment recommendations in the community.
 
 
 16
 The record also reflects that Dr. Norton testified at the hearing in a manner consistent with his diagnosis. In light of this record, we conclude that the district court did not err in finding that Phelps remains both mentally ill and dangerous due to his mental illness.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The bombs were placed at a Black Studies Department of San Francisco State University, a synagogue, a synagogue school, the house of a Rabbi, and the Humanist Party office