**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

JEFFREY ALAN HILGER,
       *Defendant-Appellant*.

No. 12-30192

D.C. No.
6:06-cr-00018-
CCL-1

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, Senior District Judge, Presiding

Argued and Submitted
June 4, 2013—Seattle, Washington

Filed August 26, 2013

Before: M. Margaret McKeown and Sandra S. Ikuta,
Circuit Judges, and Cormac J. Carney, District Judge.[*]

Opinion by Judge McKeown

---

[*] The Honorable Cormac J. Carney, District Judge for the U.S. District
Court for the Central District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a judgment revoking supervised release, the panel held that the *Opper* rule, which requires a conviction to rest on more than the uncorroborated confession of the defendant, does not apply to revocation of supervised release.

The panel concluded that on the record in this case the district court did not abuse its discretion in revoking the defendant's supervised release based on his confession.

### COUNSEL

Michael Donahoe, Senior Litigator, Federal Defenders of Montana, Helena, Montana, for Appellant.

Leif M. Johnson (argued) and Marcia Hurd, United States Attorney's Office for the District of Montana, Billings, Montana, for Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

McKEOWN, Circuit Judge:

In criminal prosecutions, where guilt must be established beyond a reasonable doubt, the Supreme Court requires a conviction to rest on more than the uncorroborated confession of the defendant. *Opper v. United States*, 348 U.S. 84 (1954). The question here is whether the same standard should be extended to revocation of supervised release.

Jeffrey Hilger was on supervised release after a child pornography conviction. After he confessed to repeatedly violating restrictions on contact with minors, the district court revoked his supervised release. In view of the fundamental differences between a criminal conviction and revocation of supervised release, including the lowered burden of proof, we decline Hilger's invitation to erect an equivalent barrier here. The *Opper* rule does not apply to supervised release proceedings.

## I. The Opper Rule Does Not Apply to Supervised Release Revocation Proceedings.

The *corpus delicti*—or "*Opper*"—rule was developed in the context of criminal prosecutions and their attendant heightened protections for defendants. *Opper* imposes two evidentiary requirements before a confession can be used as the basis for conviction. First, the government "must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred." *United States v. Lopez–Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992). This foundation ensures that convictions are not based on confessions to nonexistent crimes. *Id.* "Second, [the

government] must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Id.* This additional requirement ensures that defendants are not convicted for making false confessions to crimes committed by others. "[O]nly when both [of] these prongs are satisfied will a jury be 'sufficiently justified' in believing the truth of a criminal admission; only then will the evidence be deemed sufficient in a case in which the conviction depends in part on such admission." *Id*.

Revocation proceedings are different. As the Supreme Court explained in *Morrissey v. Brewer*, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. 471, 480 (1972); *see also United States v. Brennick*, 337 F.3d 107, 109 (1st Cir. 2003) (distinguishing revocation from prosecution because "revocation is designed to punish an offender's breach of trust in violating the court-ordered terms of release, so the sanction is independent of . . . regular criminal prosecution for the crime"). The government's burden of proof is accordingly lower: it must prove only a violation of the conditions of release by a preponderance of the evidence. *United States v. Turner*, 312 F.3d 1137, 1142 (9th Cir. 2002).

Revocation proceedings are to be "flexible," reflecting their difference from a criminal prosecution. *Morrissey*, 408 U.S. at 489. Because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions," *id.* at 480, the court is permitted "to consider evidence including

letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489.[1]

*Opper's* strict corroboration requirements are ill-suited to this context. *See id*. ("We emphasize there is no thought to equate . . . revocation to a criminal prosecution in any sense."). Although federal courts have not directly addressed the question, state courts have consistently held that the *Opper* rule does not apply to revocation proceedings. *See e.g.*, *Commonwealth v. Kavanaugh*, 482 A.2d 1128, 1130 (Pa. Super. Ct. 1984) (holding that the *corpus delicti* rule is inapplicable in probation revocation proceedings because they are not a stage of criminal prosecution); *see also People v. Monette*, 25 Cal. App.4th 1572, 1575 (Ct. App. 1994) ("The nature of a probation revocation hearing, however, does not require the application of the corpus delicti rule."); *State ex. rel. Russell v. McGlothin*, 427 So. 2d 280, 282 (Fla. Dist. Ct. App. 1983) (reversing trial court's determination that an uncorroborated admission of drug sales was insufficient evidence to revoke probation). Although not directed to this precise point, federal courts consistently recognize the difference between criminal trials and revocation proceedings. *See Brennick*, 337 F.3d at 111–12 (upholding revocation where defendant's confession to drug

---

[1] The procedural requirements in revocation proceedings are basic: (a) written notice of the claimed violations of parole; (b) disclosure of the evidence against the parolee; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body; and (f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole. *Morrissey*, 408 U.S. at 489. Hilger does not claim that his revocation hearing was procedurally deficient.

use was corroborated by positive test and noting that in the more flexible federal revocation proceedings, a court need not "determine whether the defendant could be *convicted*," but whether "the defendant has engaged in conduct that *constitutes an offense* under state law") (emphasis in original). We agree with these courts and hold that *Opper* does not bar revocation here as a matter of law.**[2]**

We do not dismiss Hilger's concerns lightly. Revocation is a serious matter and involves a real deprivation of liberty. *See Morrissey*, 408 U.S. at 482 (acknowledging that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others"). But our decision does not deprive Hilger of protection against unjust incarceration. Hilger exercised his right to confront and cross-examine the government's witnesses and evidence and presented his own evidence that the allegations are false. *Cf. United States v. Perez*, 526 F.3d 543, 550 (9th Cir. 2008) (revocation of supervised release based on a positive drug test was improper where the defendant was not allowed to cross-examine technician to determine if the test was reliable). Hilger's rights were adequately protected through these existing mechanisms, and we decline to impose further restrictions on revocation proceedings.

---

**[2]** Our opinion should not be read as creating a per se rule that the government need never introduce more than a defendant's uncorroborated confession in order to establish a violation of the terms of supervised release. The district court must determine whether the government has established such a violation by a preponderance of the evidence on a case-by-case basis.

## II. The District Court Did Not Abuse Its Discretion In Finding That A Violation Had Occurred.

"We review the district court's decision to revoke a term of supervised release for abuse of discretion." *United States v. Harvey*, 659 F.3d 1272, 1274 (9th Cir. 2011). "A court may revoke a term of supervised release and sentence a defendant to a term of imprisonment if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release." *United States v. Spangle*, 626 F.3d 488, 497 n.3 (9th Cir. 2010) (citing 18 U.S.C. § 3583(e)(3)).

Hilger was convicted on child pornography charges in 2007. He began a term of supervised release in January 2011. While on release, Hilger was subject to two restrictions relevant here: (1) he was required to complete a sex offender treatment program and abide by its terms while enrolled; and (2) he was prohibited from being in the company of children under the age of 18 without prior approval by the U.S. Probation Office. Hilger passed a first polygraph examination verifying his compliance with these conditions in September 2011. His second examination, in March 2012, indicated deception when he denied prohibited contact with minors. In the follow-up interview with his probation officer, Hilger initially claimed innocence, but later admitted to six specific unauthorized contacts. Hilger was taken into custody and charged with violating the conditions of his release; a revocation hearing followed.

The thorough revocation hearing, which spanned multiple days, resulted in the district court's conclusion that Hilger had violated the terms of his release and imposition of a 24-month sentence. The key evidence was Hilger's detailed

confession to six prohibited contacts, each of which was described at the hearing by Hilger's probation officer.  It is apparent from the district court's questioning that the court delved into the confession in detail and made a concerted effort to determine the reliability and accuracy of the confession.

Hilger described exposing himself to one girl of approximately 13, giving a precise location on a local bike trail, and describing her body, outfit, and hair color.  Another time, Hilger said, he spoke with a 13-year old girl for a few minutes, touched her neck, and then started speaking to her about sex and asked to touch her, after which she left.  Hilger also recounted a sexual contact with a 10-year old girl in graphic detail, as summarized by the probation officer:

> [Hilger] reports he exposed himself to her and asked her if she would touch his penis . . . [She complied].  Then Mr. Hilger asked her to lift up her shirt and she indicated she was going to do so but did not.
>
> He said that he had seen her a couple of times before and had said hi to her and that he watched her for 10 to 15 minutes in the bushes before approaching her; that she was wearing sandals; had pink shorts on and a belly-type shirt and was of slim build and was a brunette.  He also discussed [additional facts about her sexual history] with her . . . and [discussed] that she lived somewhere in a trailer court nearby.

(Excerpted to delete specific graphic details.). Hilger gave similarly detailed descriptions of three additional encounters with girls that, although prohibited, were not overtly sexual. Hilger does not argue, and there is no suggestion, that the probation officers used coercive or improper techniques to elicit his confession.

After hearing the confession, one probation officer visited the bike trail and verified that, as Hilger had described, children used it alone. However, he did not verify that any contacts had occurred, and the local police had received no reports matching Hilger's admissions. It appears that there was no further investigation of the contacts.

The probation officer also contacted Hilger's sex offender treatment provider regarding the admissions; Hilger was promptly terminated from the program. Hilger's counselor testified that Hilger had lied to his treatment group by saying that he had stopped engaging in inappropriate fantasies, only admitting the truth after the group confronted him. However, the counselor testified that he would not have terminated Hilger based on his lies alone.

Hilger's sister also testified at the revocation hearing. She did not independently confirm any of the details of Hilger's confessions, although she did verify that Hilger had a bicycle and rode it on a local trail. She said that Hilger "doesn't have the capacity to" make up stories as detailed as those he told the probation officers. She believed that Hilger was a danger to the community and she feared that he would reoffend.

Hilger called an expert, Dr. Bowman Smelko, who testified that he had examined Hilger and concluded that he

was suggestible and prone to making up stories to suit his questioners. Dr. Smelko did not believe that the probation officers acted improperly, but said that even under normal conditions Hilger was "low functioning and . . . the way in which he handles stress . . . is to acquiesce and try to please, so" Hilger was prone to confabulation under pressure. Dr. Smelko noted that Hilger is "an individual that comes across as very normal functioning," and cautioned that Hilger's confession should not be believed simply because Hilger had not appeared stressed. However, Dr. Smelko did not offer specific reasons to believe that these particular confessions were false. Dr. Smelko's testimony only raised general concerns about the possibility of a false confession.

The district court also allowed Hilger to describe his interview and explain his confession. Hilger said that he "did fabricate the story," and that he "never did touch any people like they said." He admitted that he "wasn't threatened," but said that the probation officer had accused him of lying after he had denied any inappropriate contacts. Hilger explained that he "just fabricated that story, you know, to get [the officer] off my back." He repeated similar explanations several times, but provided no additional relevant details.

On this record, we conclude that the district court did not abuse its discretion in revoking Hilger's supervised release based on his confession. This matter was triggered by a polygraph test indicating that Hilger had unauthorized contact with minors, therefore corroborating his later confession. Hilger's subsequent interrogation was noncoercive. His confessions were detailed, in contrast to his nonspecific and repetitive responses to the district court's questions. Hilger's own sister also commented that fabrication in this detail exceeded Hilger's abilities. Hilger was allowed to present a

complete defense. Dr. Smelko testified at length and the district court questioned him extensively. Although Dr. Smelko raised important concerns, his testimony was speculative and provided no specific reasons to doubt Hilger's confession to these particular contacts. The district court's decision to credit Hilger's confession was amply supported by the record.

**AFFIRMED.**