**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ANDREW WAYNE HULEN,<br>*Defendant-Appellant.* | No. 16-30160<br><br>D.C. No.<br>1:15-cr-00012-<br>SPW-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted October 2, 2017
Seattle, Washington

Filed January 10, 2018

Before: Kim McLane Wardlaw, Richard R. Clifton,
and John B. Owens, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's judgment revoking the defendant's supervised release based on the defendant's admissions during mandatory sex-offender treatment.

The panel held that a proceeding to revoke supervised release is not a criminal case for purposes of the Fifth Amendment against self-incrimination, and that the district court therefore did not violate the defendant's right against self-incrimination by revoking his supervised release based on his admissions.

### COUNSEL

David A. Merchant II (argued) and Joslyn Hunt, Assistant Federal Defenders; Anthony R. Gallagher, Federal Defender; Federal Defenders of Montana, Billings, Montana; for Defendant-Appellant.

John David Sullivan (argued), Assistant United States Attorney; Leif M. Johnson, Acting United States Attorney; United States Attorney's Office, Billings, Montana; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

CLIFTON, Circuit Judge:

The issue in this case is whether admissions made during mandatory sex-offender treatment may be used against a defendant to revoke supervised release. Answering that question requires us to consider whether a proceeding to revoke supervised release is a "criminal case" for purposes of the Fifth Amendment right against self-incrimination.

While on supervised release, Andrew Hulen violated various conditions of his release. He admitted those violations during sex-offender treatment, in which he was required to participate as a condition of his release. Based on those admissions, he was terminated from treatment, and the district court revoked his supervised release. Hulen argues that the use of his statements against him in the revocation proceeding by the district court violated his right against self-incrimination under the Fifth Amendment. We hold that the district court did not violate Hulen's right against self-incrimination because that right extends only to prohibit the use of an admission in a criminal case. A proceeding to revoke supervised release is not a criminal case for purposes of the Fifth Amendment right against self-incrimination. Accordingly, we affirm the decision of the district court.

## I. Background

At the time of the events alleged in this case, Hulen was serving a five-year term of supervised release that followed twelve months of imprisonment for failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). As a condition

of his supervised release, Hulen was required to participate in sex-offender treatment.

Two months into his supervised release, Hulen informed his treatment provider that he was not doing all he could to progress in treatment. Hulen's provider told him to write down everything he had done in violation of his treatment program, which he did. Hulen's violations included using marijuana; spending nights with a woman; receiving nude photos and video from two different women; sending nude photos and video; sexting; having contact with an individual with whom he was not permitted to have contact; attending a party where alcohol was present; entering a bar; being in the company of minors; contacting people on Craigslist; going to an adult bookstore; lying to his probation officer and treatment provider about what he had done; failing to notify his probation officer about being terminated from his employment because of not showing up; failing to provide to his treatment provider all of the email addresses he was using; utilizing social media sites to meet people and using an alias to hide his status as a sex offender; going to a mall; deleting photos and videos he had taken and lying about his actions; having contact with two individuals who were on probation; and failing to make payments toward his $100 special assessment.

Hulen's treatment provider sent a letter to Hulen's probation officer, informing her that Hulen would be terminated from treatment. The treatment provider included the list of violations in his letter. Hulen's probation officer then filed a petition to revoke Hulen's supervised release based on Hulen's admissions. Shortly thereafter, Hulen was officially terminated from the treatment program. Because treatment was itself a condition of Hulen's supervised release,

the probation officer filed an amended petition adding Hulen's termination from the program to the list of violations.

Hulen filed a motion to strike twenty of the twenty-three alleged violations listed in the amended petition. In response, his probation officer removed the challenged violations and filed a second amended petition containing only three purported violations. The remaining allegations were: (1) accepting employment without permission; (2) failing to make payments toward his special assessment; and (3) being terminated from the treatment program. The government later acknowledged that the first two alleged violations were "not that significant" but described the third as the "most egregious offense."

Hulen admitted to the three violations. The district court revoked Hulen's supervised release and sentenced him to another six months of imprisonment followed by a new fifty-four-month term of supervised release. Hulen now appeals his sentence, arguing that the district court violated his right against self-incrimination by relying on his admissions to revoke his supervised release.

## II. Discussion

### A. Mootness

As a threshold matter, the government argues that Hulen's appeal is moot because he has already served his term of imprisonment and is once again on supervised release. We review questions of mootness de novo. *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).

"A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)).  Although Hulen has already served his term of imprisonment, he remains on supervised release.  An appeal of a sentence is not moot where success on the appeal could alter the length or conditions of the supervised release portion of the defendant's sentence. *United States v. Verdin*, 243 F.3d 1174, 1178 (9th Cir. 2001).  Because that is the case here, this appeal is not moot.

### B.  Fifth Amendment

Hulen argues that the district court violated his Fifth Amendment right against self-incrimination.  We review potential violations of the Fifth Amendment de novo. *In re Grand Jury Subpoena*, 75 F.3d 446, 447 (9th Cir. 1996).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  Thus, the Fifth Amendment provides a right against compelled self-incrimination, but that right only applies when a compelled statement is used against a defendant in a "criminal case." *Chavez v. Martinez*, 538 U.S. 760, 766–67 (2003) (plurality opinion); *Stoot v. City of Everett*, 582 F.3d 910, 922–23 (9th Cir. 2009).

A compelled statement is used in a criminal case when it is "relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status." *Stoot*, 582 F.3d at 925.  Thus, "in cases where police coerce a statement but do not rely on that statement to file formal charges or oppose bail,

the Fifth Amendment would not be implicated." *Id.* at 925 n.15.

The Fifth Amendment may be implicated when a probation officer coerces an individual into making an incriminating statement, if the statement is used against the probationer in a criminal case. For example, we have held that there was a Fifth Amendment violation when a probationer was compelled to make incriminating admissions that were later used to charge the probationer with a new crime. *United States v. Saechao*, 418 F.3d 1073, 1075–76 (9th Cir. 2005). Here, however, Hulen was not charged with a new crime. Instead, his supervised release was revoked. That is not the same thing.

"It is well established that parole revocation is not part of a criminal prosecution."[1] *Standlee v. Rhay*, 557 F.2d 1303, 1306 (9th Cir. 1977) (citing *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). "[T]hus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey*, 408 U.S. at 480. Revocation proceedings implicate fewer rights because revocation "is not new punishment for a new crime. It is part of the whole matrix of punishment which arises out of a defendant's original crime, of which the defendant has already been convicted after a trial subject to the full panoply of constitutional guarantees." *United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995) (alteration incorporated) (internal quotation marks omitted)). Thus, "[r]evocation

---

[1] "Parole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner." *United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005) (citing *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999)).

deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480.

The Supreme Court articulated these principles in *Morrissey*, holding that revocation proceedings require only basic due process rather than the full protection of the Sixth Amendment. *Id.* at 481–89.; *cf. Middendorf v. Henry*, 425 U.S. 25, 37 (1976) ("[T]he fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment."). Based on *Morrissey*, we have repeatedly recognized that revocation proceedings are not "criminal cases" that would confer various rights due to defendants in criminal proceedings. For example, we held that the Sixth Amendment right to self-representation does not apply to revocation proceedings in *United States v. Spangle*, 626 F.3d 488, 494 (9th Cir. 2010). We held that the Sixth Amendment right of confrontation does not extend to revocations in *United States v. Hall*, 419 F.3d 980, 985–86 (9th Cir. 2005). We held that supervised release may be revoked without corroborating a confession, even though corroboration is required to convict a defendant at trial, in *United States v. Hilger*, 728 F.3d 947, 949–51 (9th Cir. 2013). And, we held that collateral estoppel does not bar a subsequent revocation after a criminal acquittal in *Standlee*, 557 F.2d at 1307.

While *Morrissey* was decided in the context of the Sixth Amendment, the principles underlying *Morrissey* apply with equal force to the Fifth Amendment right against self-incrimination. Indeed, the Supreme Court indicated as much in *Minnesota v. Murphy*, 465 U.S. 420 (1984). The issue in

*Murphy* was whether the Fifth Amendment right is self-executing, but in a footnote the Court explained that "a revocation proceeding . . . is not a criminal proceeding. Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer." *Id.* at 435 n.7 (internal citations omitted). Based partly on *Murphy*, we later held that an insanity acquittee could not invoke the right against self-incrimination in the context of a release hearing. *United States v. Phelps*, 955 F.2d 1258, 1263 (9th Cir. 1992). The right did not apply to statements made for purposes of the release hearing, even though such statements could prolong the insanity acquittee's loss of liberty. *Id.* Instead, the right would only apply to future criminal prosecutions. *Id.*

The same reasoning applies here. A revocation proceeding is not a new criminal proceeding, but is instead part of the "matrix of punishment" arising out of the original crime. *Soto-Olivas*, 44 F.3d at 792. Thus, the full panoply of rights due a defendant in a criminal proceeding does not apply to revocations. *See Morrissey*, 408 U.S. at 480. Revocation deprives a probationer only of the conditional liberty properly dependent on observance of special restrictions. *See id.* The Fifth Amendment does not provide a right to avoid the consequences of violating those special restrictions. Accordingly, a revocation proceeding is not a criminal case for purposes of the Fifth Amendment right against self-incrimination.

Hulen cites a number of cases to support his position, but none of them address whether a revocation proceeding is itself a criminal proceeding for purposes of the right against self-incrimination. In *Saechao*, the question presented was

whether the right against self-incrimination was self-executing under the particular facts of the case. *Saechao*, 418 F.3d at 1075. The probationer in *Saechao* was compelled to provide evidence that was used to charge him with a new crime. *Id.* at 1075–76. The later criminal proceeding was the "criminal case" for purposes of the Fifth Amendment. Similarly, in *United States v. Bahr*, a statement made during a period of post-prison supervision was used to determine a sentence in a later, unrelated criminal proceeding. 730 F.3d 963, 965–66 (9th Cir. 2013). Finally, in *United States v. Antelope*, a probationer refused to detail his sexual history out of fear that he would be charged with new crimes for past actions. 395 F.3d 1128, 1135 (9th Cir. 2005). We noted that we had "no doubt," based on the facts of the case, "that any admissions of past crimes would likely make their way into the hands of prosecutors." *Id.* We therefore upheld the probationer's right to refuse to detail his sexual history because the answers "would incriminate him in a pending or later criminal prosecution." *Id.* (quoting *Murphy*, 465 U.S. at 435). Thus, our analysis was driven by the threat of a new prosecution. We did not address the question of whether the Fifth Amendment would be implicated by an admission leading to the revocation of supervised release.

If an effort had been made to charge and convict Hulen for a new crime based on his admissions, he would presumably be able to claim the benefit of the Fifth Amendment. That is not the case before us, however. The right against self-incrimination did not prevent the use of his admissions to revoke his supervised release.

## III. Conclusion

There was no violation of Hulen's right against self-incrimination because a proceeding to revoke supervised release is not a criminal case for the purposes of the Fifth Amendment.

**AFFIRMED.**