**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

           v.

KENNETH LYLE SPANGLE,
           *Defendant-Appellant.*

No. 09-50508

D.C. No.
2:03-cr-00588-AK-1

OPINION

Appeal from the United States District Court
for the Central District of California
Alex Kozinski, Chief Circuit Judge,
Presiding by Designation

Argued and Submitted
September 21, 2010—San Francisco, California

Filed November 19, 2010

Before: Richard C. Tallman, Richard R. Clifton, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Tallman

---

**COUNSEL**

Jonathan D. Libby (argued), Assistant Federal Public Defender; Kathryn A. Young, Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for defendant-appellant Kenneth Lyle Spangle.

Daniel B. Levin (argued), Assistant United States Attorney; Michael R. Wilner, Assistant United States Attorney, Deputy Chief, Major Frauds Section; Christine C. Ewell, Assistant United States Attorney, Chief, Criminal Division; Andre Birotte, Jr., United States Attorney, Los Angeles, California, for plaintiff-appellee United States of America.

---

**OPINION**

TALLMAN, Circuit Judge:

Defendant-Appellant Kenneth Lyle Spangle appeals from the twenty-four-month term of imprisonment imposed upon the revocation of his supervised release. Spangle contends that he was denied his Sixth Amendment right to represent himself, that the district court judge should have recused himself, and that the sentence imposed was procedurally and substantively unreasonable. Because all of Spangle's contentions are without merit, we affirm the judgment and sentence.

**I**

This appeal has its genesis in Spangle's 1996 guilty plea to a charge of bank robbery. In April 1997, Spangle was sen-

tenced to fifty-seven months imprisonment, followed by three years of supervised release. Upon his first release from federal prison on March 23, 2001, Spangle never reported to his probation officer. A bench warrant was issued, and he was arrested in early June 2001. The district court conducted three evidentiary hearings to determine whether to revoke Spangle's supervised release, and Spangle's probation officer participated in all three hearings. The district court eventually did revoke his supervised release and sentenced him to an additional twenty-four months in prison.

After Spangle was sentenced, he sent two threatening letters to his former probation officer, and he called the federal public defender's office and stated that he wanted to kill a judge. Two weeks before Spangle was to be released, in May 2003, he sent a third letter to his former probation officer, directing her to look at a calendar and stating that her time was "running out." The probation officer did not directly receive this letter as she no longer worked at the office where the letter was sent, but the supervisor for that office read the letter and immediately contacted the probation officer's new supervisor.

Spangle was indicted on two counts of mailing threatening communications, a violation of 18 U.S.C. § 876(c), for two of the letters he sent to the probation officer. On February 11, 2004, the Honorable Alex Kozinski, Chief Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation, found Spangle guilty after a bench trial on one of the counts of mailing a threatening communication. In June 2004, Judge Kozinski sentenced Spangle to seventy-two months imprisonment with an additional three-year term of supervised release.

Spangle was again released from federal custody on January 8, 2009. At the time of this release, Spangle was fitted with a monitoring device to track his whereabouts during his three-year term of supervised release. Prior to absconding,

Spangle failed to inform his probation officer[1] that he had purchased a car notwithstanding the requirement that he disclose any purchase over $500. On February 15, 2009, less than six weeks following his release and while his probation officer was out of town, Spangle cut the monitoring device off of his ankle, and he absconded from his approved residence at his sister's home in Santa Rosa, California.

Before Spangle violated his supervised release this time, he made suspicious statements both to his sister and to a teller at the local branch of his bank. He told his sister that he was about to do something that she and the probation officer would not like. He complained to the bank teller about the fifteen-day waiting period for purchasing a gun imposed by California law. Spangle also withdrew approximately $2,000 from his bank account a week before removing and discarding his monitoring device and leaving Santa Rosa.

A warrant was issued for Spangle's arrest on February 17, 2009, because he had violated the terms of his supervised release. He was picked up the next day. Although the terms of his supervised release prohibited Spangle from leaving Santa Rosa, he was arrested by officers from the Los Angeles Police Department ("LAPD") at a Citibank branch in Canoga Park, over four hundred miles from Santa Rosa. The officers impounded Spangle's car, and it was later searched by two probation officers and an agent from the Federal Bureau of Investigation.

During the search, law enforcement officers found numerous items of interest. In the front passenger compartment of Spangle's car, the officers found several pieces of paper. One particular sheet had the name of Spangle's former probation officer, the one he had previously threatened, and what appeared to be her address. Other papers contained personal

---

[1]During this period of supervised release, Spangle communicated with a probation officer who was not the person he had previously threatened.

information about an assistant United States attorney who had previously prosecuted Spangle and information about both state and federal judges. A search of the trunk of Spangle's car uncovered similar documents, including personal information about Judge Kozinski and his family. Officers also found numerous magazines and periodicals about firearms and bullets, as well as a directory of California state governmental offices. However, no weapon was found in Spangle's vehicle.

When he appeared before Judge Kozinski on February 20, 2009, Spangle admitted violating the terms of his supervised release by removing the monitoring device and fleeing Santa Rosa. At a status conference on April 6, 2009—held three days before a pre-sentencing evidentiary hearing—Spangle asked to proceed pro se because his appointed attorney allegedly refused to provide certain documents to Spangle. Spangle's attorney explained that he did not provide the requested documents because they were irrelevant to the evidence that was to be presented at the pre-sentencing evidentiary hearing. Judge Kozinski denied Spangle's request, stating that it was too close to the date of the evidentiary hearing, but notified Spangle that he could renew his request to proceed pro se before sentencing. Judge Kozinski then addressed the prosecution's suggestion that he might want to consider whether to recuse himself in light of the fact that materials in Spangle's possession contained personal information about the judge. Judge Kozinski noted the fact that such personal information is now readily available on the Internet, and he stated that he had no subjective belief that Spangle presented a danger to him. Judge Kozinski found that Spangle's "modus operandi" was to make lists, and that these lists did not, without more, constitute a basis for recusal. Spangle said nothing at the hearing on this issue.

At the evidentiary hearing held on April 9, 2009, the prosecution presented evidence of Spangle's interaction with his probation officer, the testimony of Spangle's sister and the bank teller regarding Spangle's statements, and evidence

about the materials found during the search of Spangle's automobile. The court made specific factual findings, including the fact that Spangle deliberately tracked down his former probation officer's address and was on his way to menace her. Judge Kozinski found that Spangle presented a threat to the former probation officer and expressed his concerns about Spangle's mental competency. The court postponed final sentencing pending a mental evaluation of Spangle under 18 U.S.C. § 4244. That evaluation concluded that Spangle was competent to understand the proceedings and assist in his defense.

Spangle's sentencing hearing was held on September 29, 2009. At the hearing, Spangle's counsel informed the court that Spangle wished to represent himself. The court, through repeated interruptions by Spangle, denied the request as untimely. It reiterated its finding that Spangle was headed to southern California to threaten or harass his former probation officer, and sentenced Spangle to two years imprisonment with an additional term of supervised release. Judgment was entered on October 9, 2009, and Spangle filed a timely notice of appeal.

## II

[1] The Sixth Amendment indisputably provides criminal defendants with the right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975). Spangle contends that the court's denial of his requests to proceed pro se deprived him of his Sixth Amendment right. The Sixth Amendment does not apply to parole revocation proceedings; it also does not apply to probation revocation proceedings if the defendant was previously sentenced. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973); *United States v. Stocks*, 104 F.3d 308, 311 (9th Cir. 1997). Because the revocation of supervised release is indistinguishable from the revocation of parole, we hold that the Sixth Amendment has no application to supervised release proceedings. *See Morrissey v. Brewer*, 408 U.S. 471,

480 (1972) ("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.").

**[2]** Because the Sixth Amendment is inapplicable, Spangle's right to self-representation arises if at all under 28 U.S.C. § 1654. Section 1654 allows a party to "plead and conduct" his own case, as permitted by the rules of the court. 28 U.S.C. § 1654. Any alleged violation of a party's statutory right to self-representation is reviewed under a harmless error standard. *See Sanchez v. United States*, 311 F.2d 327, 332 (9th Cir. 1962) (examining the district court's order for "prejudicial error").[2] We do not decide whether the court erred in denying Spangle's requests to represent himself because any alleged error was harmless.

**[3]** Initially, Spangle desired to proceed pro se because his appointed counsel allegedly refused to provide Spangle documents he had requested. Spangle sought all of the information about the LAPD search of his car. He thought the condition of the vehicle both pre- and post-search was material because the court placed significant weight on the specific location of the document with the former probation officer's name and address. However, the record indicates that the court did not focus on the location of the document. The underpinnings of the court's factual findings were that Spangle possessed the probation officer's personal information, was en route to her

---

[2]This comports with our analysis of Sixth Amendment challenges to denial of a defendant's right to represent himself at sentencing. In such situations, "improper denial of a defendant's motion to proceed pro se at sentencing, rather than at trial, is not a structural error and is thus subject to harmless error analysis." *United States v. Maness*, 566 F.3d 894, 897 (9th Cir. 2009).

location at the time he was arrested, and had acted suspiciously in the weeks before he absconded from his sister's residence. The denial of Spangle's request was harmless because the only rationale underlying his request was his desire to obtain irrelevant discovery. He had already admitted to violating the terms of his supervised release when he became fixated on this issue.

[4] Furthermore, Spangle's access to these documents did not impact the supervised release sentencing proceedings because the court was aware of the fact that officers from the LAPD had searched the vehicle before the federal probation officers conducted their search. The court explicitly asked if the LAPD officers took anything out of the vehicle, and the probation officer testified that he was the first to remove anything and that it was "most likely" that the document in question was in the passenger compartment at the time Spangle was arrested. Thus, the court explored the issue that spurred Spangle's request to represent himself, rendering the denial of that request harmless.

[5] Likewise, any presumed error arising from the denial of Spangle's second request to represent himself was harmless. Spangle wanted to represent himself because he believed his appointed counsel was ineffective and afraid of Judge Kozinski. The record establishes that at sentencing the court allowed Spangle ample opportunity to speak and interject on his own behalf. Spangle expressed his animosity towards any supervision, and he challenged or offered innocent explanations for all of the factual findings contained in the presentence investigation report. He also argued that any additional period of incarceration would violate the Eighth Amendment, and he requested that he be allowed to move to Vancouver, British Columbia, in lieu of further imprisonment. Spangle does not now present any information or argument that he was prohibited from introducing at the sentencing hearing as a result of the denial of his request to proceed pro se. There was

no prejudicial error in denying his statutory application to represent himself.

## III

Spangle next challenges the court's failure to recuse. The prosecution filed a brief asking the judge to consider whether he might wish to recuse himself under 28 U.S.C. § 455, and it made clear it was not formally moving for recusal. Spangle never made such a request. It is true that Spangle's failure to seek recusal below does not prevent him from raising the issue on appeal. *Noli v. Comm'r*, 860 F.2d 1521, 1527 (9th Cir. 1988) ("Failure to move for recusal at the trial level, however, does not preclude raising on appeal the issue of recusal under § 455."). However, Spangle now faces a "greater burden" to demonstrate that the judge erroneously failed to recuse. *Id.*; *United States v. Holland*, 519 F.3d 909, 911-12 (9th Cir. 2008). We review the court's decision for plain error. *Holland*, 519 F.3d at 911.

In *Holland*, we outlined the objective and subjective aspects of § 455. *Id.* at 914-15. Under the objective standard, a judge must recuse in any case where "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is a fact-specific inquiry that should be guided by the circumstances of the specific claim. *Holland*, 519 F.3d at 913. The subjective inquiry, on the other hand, requires the judge "to determine whether he can be truly impartial when trying the case." *Id.* at 915. This is a "highly personal" test in which a judge must decide his ability to "set aside emotion and thoughtfully examine his ability to impartially 'administer justice without respect to persons.' " *Id.* (quoting 28 U.S.C. § 453).

Spangle contends that Judge Kozinski should have recused because Spangle possessed personal information about the judge and his family. He argues that the judge did not consider the objective aspect of the § 455 analysis. Under the

facts of this case, we hold that the judge did not plainly err by refusing to recuse.

## A

**[6]** When the alleged basis for recusal is a threat against the judge, the objective prong warrants recusal if a "reasonable third-party observer would perceive that there is a significant risk that the judge will be influenced by the threat and resolve the case on a basis other than the merits." *Holland*, 519 F.3d at 914 (internal quotation marks omitted). The judge must evaluate the risk that the threat will be carried out and the extent of harm realized if the threat is fulfilled. *Id.* Three factors may guide this analysis: (1) the defendant's ability to carry out the threat; (2) the defendant's demeanor and the context of the threat; and (3) the perceived purpose of the threat. *Id.* at 914-15.

**[7]** "The final factor is, perhaps, the most important," *id.* at 915, and it is the one that controls the resolution of Spangle's challenge. Although Spangle argues that the court did not conduct the objective inquiry required by § 455(a), the record belies his argument. When rejecting the possibility of recusal, the court found that it was Spangle's "modus operandi" to make lists, and he further found that any replacement judge would likely also find himself or herself on one of Spangle's lists. The court thus considered the perceived purpose of Spangle's actions and reasonably found it to be one of intimidation rather than actual malice. It is imperative that we not allow defendants to "manipulate the system" by "threatening every jurist assigned on the 'wheel' until the defendant gets a judge he prefer[s]." *Id.* Imposing a requirement that a judge recuse every time a defendant, like Spangle, makes an implicit threat against the judge would subvert the policy underlying § 455(a) and condone gamesmanship by cunning defendants.

**[8]** Additionally, the context of Spangle's threat does not necessitate the conclusion that there was an objective basis for

recusal. Here, Spangle did not make an overt threat to the judge or his family; he simply obtained information about them. While we do not minimize the gravity of the availability of such information, we also recognize, as did Judge Kozinski, that modern technology has made such information all too readily available. Although Spangle obviously obtained this information, there is no evidence that he had acted on it or was planning to take action against the judge. The judge did not plainly err by concluding that there was no objective basis for his recusal.

**B**

**[9]** The subjective test required by § 455(b) is a test for "actual bias." *Holland*, 519 F.3d at 915. The judge found no subjective reason for recusal because he did not feel threatened by Spangle. We see no basis in the record to hold this conclusion plainly erroneous.

**[10]** There is a rational distinction between the criminal threat made to his former probation officer and any potential threat inherent in Spangle's possession of personal information about the judge and many others with whom Spangle had prior contact. Spangle had a history of threatening the probation officer and had gone to great lengths to convey those threats explicitly. He had even uncovered the probation officer's new address notwithstanding the fact that his initial interaction with her had ended eight years earlier. Moreover, he was arrested in the general vicinity of her home—over four hundred miles away from where he was required to be— within four days of absconding from supervised release. This type of affirmative action is distinguishable from the latent threat posed by the act of uncovering personal information about a judicial officer. There is no evidence in the record to controvert the judge's "highly personal" analysis that he was not threatened by Spangle's actions. There was no plain error in refusing to recuse.

## IV

Finally, Spangle challenges both the procedural correctness and substantive reasonableness of his sentence.[3] He argues that his sentence is procedurally unreasonable because it is based on clearly erroneous facts, and that it is substantively unreasonable because it is greater than what is necessary to accomplish the goals identified in 18 U.S.C. § 3553(a). The standard of review for allegations of procedural error in sentencing is abuse of discretion. *United States v. Ressam*, 593 F.3d 1095, 1122 (9th Cir. 2010). A district court has abused its discretion if the sentence is based on clearly erroneous facts. *Id.* We also review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009).

## A

Spangle challenges the court's factual findings regarding his demeanor during proceedings, his dangerousness to society, his mental health, and his threat to his former probation officer. He now offers innocent explanations for his behavior such as a hearing impairment and a desire to return to Orange County because that is where he grew up; he also relies heavily on the results of psychological evaluations completed while Spangle was incarcerated. However, it is not our duty to reweigh the evidence presented to the trial court.

[11] In order to reverse a district court's factual findings as clearly erroneous, we must determine that the district court's factual findings were illogical, implausible, or without sup-

---

[3]A court may revoke a term of supervised release and sentence a defendant to a term of imprisonment if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). When making this determination, the court must consider the factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3583(e).

port in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Spangle's proffered explanations do not convince us that the court's finding was clearly erroneous. While it may have been true that Spangle's self-admitted "loud and uncontrollable conduct" resulted from a hearing impairment, it is also plausible that such behavior arose from his contempt of authority. Likewise, while Spangle may have been drawn to Orange County due to homesickness, it is equally likely that he drove there in an attempt to further harass his former probation officer. It is the trial court's duty to determine the credibility of such proffered explanations, and drawing the inference from these facts that Spangle was pursuing a vendetta against his former probation officer is plausible from the evidence presented during the revocation proceedings.

**[12]** The court did not abuse its discretion on the basis of procedural error when it sentenced Spangle to twenty-four months imprisonment because its factual findings were not clearly erroneous.

**B**

**[13]** Although not clear from the record, we assume that the court found Spangle guilty of a Grade C violation of his supervised release. Given Spangle's criminal history category of V, as calculated in his prior presentence report, the range of imprisonment recommended by the Sentencing Guidelines was seven to thirteen months. U.S. Sentencing Guidelines Manual § 7B1.4(a) (2008). Thus, the twenty-four month sentence imposed by the court fell outside of the applicable policy statements issued by the Sentencing Commission.

Congress gave the Sentencing Commission authority to issue either guidelines or policy statements "regarding the appropriate use of" the provisions governing the revocation of supervised release under 18 U.S.C. § 3583(e). 28 U.S.C. § 994(a)(3). The Sentencing Commission chose to issue pol-

icy statements rather than guidelines, and these statements are contained in Chapter 7 of the Sentencing Guidelines. U.S. Sentencing Guidelines Manual ch. 7, pt. A, introductory cmt. (2008). Like the Sentencing Guidelines, these policy statements are only recommendations from which district courts have discretion to depart. *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Courts are required, however, to consider the § 3553(a) factors when modifying or revoking a defendant's supervised release. 18 U.S.C. § 3583(e).

We cannot presume that a sentence is substantively unreasonable only because it falls outside the range recommended by the Sentencing Commission. *United States v. Edwards*, 595 F.3d 1004, 1015 (9th Cir. 2010). We must instead consider the totality of the circumstances and "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007). Reversal is appropriate only if the district court's sentence is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *See United States v. Treadwell*, 593 F.3d 990, 999 (9th Cir. 2010) (quoting *Hinkson*, 585 F.3d at 1262).

**[14]** The court did not abuse its discretion when it imposed a sentence above that recommended by the Sentencing Commission for violating supervised release. The court was cognizant of its statutory duty to apply the § 3553(a) factors, and it thoroughly explained its factual findings related to Spangle's future dangerousness. It reasoned that because Spangle wasted little time in withdrawing cash from his bank account, purchasing a vehicle, attempting to purchase a gun, and uncovering information about his former probation officer's whereabouts after absconding from his supervised release, he posed a serious threat to his previous victim. Notwithstanding Spangle's arguments to the contrary, there is no evidence in the record that the court gave this consideration undue weight or failed to consider other relevant statutory factors. Conse-

quently, the court did not impose a substantively unreasonable sentence.

**AFFIRMED.**