Filed 12/16/22  P. v. Kirgiorgis CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>PAUL APOSTOLOS KIRGIORGIS,<br><br>        Defendant and Appellant. | A163156<br><br>(Napa County Super. Ct.<br>No. 21CR001237) |

The trial court revoked the parole of appellant Paul Kirgiorgis after he disabled a monitoring device that he was required to wear as a condition of parole.  In this court, appellant challenges the revocation order, contending he was deprived of his constitutional right to counsel of his choice at the parole revocation hearing.  Alternatively, he claims the trial court improperly revoked his constitutional right of self-representation.  We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2018, appellant was convicted of obstructing or resisting a peace officer in violation of Penal Code section 69.  He had multiple prior felony and misdemeanor convictions.

On June 10, 2021 (all subsequent dates are in 2021), appellant was arrested while on parole for removing a GPS device he was required to wear.  This was the third time appellant had disabled his GPS device, and second time absconding while on parole.  A petition to revoke parole was filed on

1

June 17.  Ultimately, the trial court ordered parole revoked and reinstated under the same terms and conditions, with the modification that appellant shall serve 180 days in jail with certain specified credits.

Appellant filed a timely notice of appeal.

DISCUSSION

Relying on the Sixth and Fourteenth Amendments to the federal Constitution, appellant challenges the parole revocation order on alternative grounds.  First he argues he was deprived of counsel of his choice.  Alternatively, he contends the trial court improperly revoked his right of self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

**A.  Background Facts**

The trial court held hearings on appellant's parole revocation, beginning on June 18 and concluding on July 14.  The record reflects the following relevant facts.

At the first hearing on June 18, appellant repeatedly told Judge Scott Young he was not "Paul Kirgiorgis" and he was not on parole.  Judge Young, however, recognized appellant from "numerous court appearances" and asked appellant if he should appoint the public defender's office to represent him in the parole revocation matter.  Appellant responded, "I want my private attorney.  I don't want Public Defenders."  When asked if his attorney was in court, appellant indicated he had no opportunity to obtain an attorney because he had been "locked up" and unable to make phone calls.  Judge Young appointed Deputy Public Defender Aric Bright to represent appellant.  Bright waived arraignment on appellant's behalf and denied the allegations of the parole revocation petition.  Thereafter, appellant reiterated he did not want the public defender's office to represent him.  Claiming the Public Defender is "not favorable for the people," appellant said he would try to

2

retain a private attorney or, if necessary, represent himself. Judge Young set a *Faretta* hearing for the following week.

At the second hearing, on June 24, Public Defender Ronald Abernethy reported to Judge Young that appellant still opposed representation by his office and that appellant would represent himself if another attorney were not appointed. Judge Young provided appellant with paperwork to read and complete in order to waive his right to an attorney and represent himself. When the hearing resumed, Judge Young informed appellant of his constitutional rights and confirmed that appellant had filled out and signed the *Faretta* waiver form. Appellant stated he wanted an attorney, but not the public defender. Judge Young told appellant he could either represent himself or hire a private attorney, but if he wanted an appointed attorney he would have to accept the public defender's office. At that point, appellant said he would represent himself, and Judge Young advised him of the risks of self-representation. Judge Young discharged the public defender's office and continued the hearing for another week so appellant could retain a private attorney. Appellant said he would have no problem representing himself.

The third hearing was held on June 30 before Judge Elia Ortiz. At the outset of the hearing, appellant said he was not ready to proceed because he did not have an interpreter or an attorney. When Judge Ortiz said she understood appellant had previously asked to represent himself, appellant said he did not want to do so and also did not want to be represented by the public defender's office. After appellant stated he had enough money to hire a private attorney, Judge Ortiz agreed to continue the proceeding "one last time" to give appellant another week to retain an attorney.

At the fourth hearing, on July 7, appellant again appeared without a private attorney. When asked by Judge Ortiz if he was choosing to represent

himself, appellant said he had spoken with two attorneys' offices but had not yet hired an attorney. Appellant also asked if he could hire a private attorney and have a second attorney appointed for him. At this juncture, Judge Ortiz noted that appellant's first appearance in the matter had been on June 18 and that the prosecutor had already subpoenaed witnesses for two prior hearings. The judge said she would reappoint the public defender's office if appellant wanted an appointed attorney. Appellant reiterated that he had contacted two attorneys' offices but had not had enough time to complete the arrangements and that they would charge $900, which he had. At that point, Judge Ortiz expressed her belief that appellant was trying to delay the judicial process, and she assigned the matter to Judge Guadagni. Judge Ortiz again asked appellant if he opposed the appointment of the public defender, and appellant twice said that public defenders "didn't take care of" him in the past. Judge Ortiz said she would ask Judge Guadagni to address the *Faretta* issue.

Later that morning, the parties returned to Judge Ortiz, who said she had been informed that appellant had "refused to come out" to Judge Guadagni's courtroom. Saying she did not have many options, Judge Ortiz reappointed the public defender's office to represent appellant. Appellant said he refused to appear at the hearing. Judge Ortiz then spoke to Deputy Public Defender Kristin Keeley, who said that Public Defender Abernethy would be prepared to represent appellant the next week. Judge Ortiz continued the parole revocation hearing for one more week.

On July 14, the parties appeared before Judge Young. Public Defender Abernethy informed the judge that appellant had consistently objected to any representation by the public defender's office and that appellant wanted another attorney appointed for him. Appellant said his original intention had

4

been to hire a private attorney, but the court "didn't let [him] do so."
Appellant claimed he had been given only five days to hire an attorney, which
was not enough time.[1] Appellant maintained that Abernethy had been
"imposed on" him. Judge Young noted that the matter had been pending for
almost a month and that appellant faced a maximum jail time of only 180
days. Appellant again protested that the court had "stop[ped]" him from
hiring a lawyer and then announced he did not want to "waste [his] time" and
had "better things to do."

For Judge Young's benefit, the prosecutor and Public Defender
Abernethy summarized the proceedings that had occurred before Judge Ortiz.
Appellant said he had bad experiences with public defenders in the past.
Judge Young ruled that the parole revocation hearing would proceed with
Abernethy representing appellant. Although appellant said he would not
participate in the hearing, he changed his mind a few moments later. The
hearing commenced before Judge Young, with Abernethy representing
appellant. After hearing testimony from a parole agent and appellant , Judge
Young found that appellant had violated his parole by intentionally and
knowingly removing a GPS device from his leg.

## B. Claimed Deprivation of Counsel of Choice

Under the Sixth Amendment to the federal Constitution, the right to
effective assistance of counsel in a criminal prosecution " 'encompasses the
right to retain counsel of one's own choosing.' " (*People v. Courts* (1985) 37
Cal.3d 784, 789 (*Courts*).) A necessary corollary of such right is that " 'a
defendant must be given a reasonable opportunity to employ and consult with

---

[1] As the record reflects, the trial court allowed appellant to retain private
counsel from the outset of the parole revocation proceedings, which began on
June 18.

counsel; otherwise, the right to be heard by counsel would be of little worth.' " (*Id*. at p. 790.) Though "revocation of parole is not part of a criminal prosecution" and does not implicate "the full panoply of rights" due in such proceedings (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480), a California parolee nonetheless enjoys a statutory right to representation by counsel at a parole revocation hearing (see § 1203.2, subd. (b)(2)) and, in some situations, as a matter of due process (see *In re Love* (1974) 11 Cal.3d 179, 182, 186–187).

As a general matter, trial courts must " 'make all reasonable efforts' " to accommodate a defendant's choice of private counsel in criminal proceedings. (*Courts, supra*, 37 Cal.3d at pp. 790–791; *People v. Williams* (2021) 61 Cal.App.5th 627, 631 (*Williams*).) The right to counsel of one's choosing, however, is not absolute. Rather, such right " 'must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case.' " (*Courts*, at p. 790.) Thus, a court need not grant a continuance of trial to accommodate a defendant if the defendant "is unjustifiably dilatory in obtaining counsel [citation], or if he arbitrarily chooses to substitute counsel at the time of trial [citation]." (*People v. Byoune* (1966) 65 Cal.2d 345, 346–347 (*Byoune*).)

Appellant offers no authority applying *Courts*'s right to private counsel analysis in the context of a parole revocation hearing. Nonetheless, even assuming the analysis applies, the trial court did nothing to deny or impede appellant's right to counsel of his choice. From the outset, the trial judges below respected appellant's wish to retain an attorney of his choice and granted several continuances so that appellant could do so. At the fourth

6

hearing concerning the revocation petition, appellant reported that he had spoken with two law offices but did not retain either despite having the funds to do so. Although the potential revocation of parole would subject appellant to a maximum confinement of only 180 days, by that point the matter had been pending for nearly a month, and witnesses had been subpoenaed for two prior hearings. On this record, we conclude the trial court acted properly " 'to ensure orderly and expeditious judicial administration' " after having provided appellant an accommodation that was " 'reasonable under the facts of the particular case.' " (*Courts, supra*, 37 Cal.3d at p. 790.)

In so concluding, we observe that the facts here are nothing like those in appellant's proffered authorities. In three of the cases, the trial court's refusal to continue trial improperly deprived the respective defendants of private counsel who were already in place. (*People v. Crovedi* (1966) 65 Cal.2d 199, 201–205, 208 [instead of continuing trial after retained counsel had heart attack, court ordered retained counsel's partner to assume the defense]; *Courts, supra*, 37 Cal.3d at p. 791 [defendant contacted private attorney two months prior to trial and established an attorney-client relationship the week before trial]; *Williams, supra*, 61 Cal.App.5th at p. 652 [attorney retained nearly a week prior to trial].) And in the fourth case, the request for a change of counsel on the eve of trial was neither untimely nor unwarranted because it was made immediately after a new and more serious charge was filed against the defendant. (*Byoune, supra*, 65 Cal.2d at p. 348.) These cases provide no basis for finding an abuse of discretion here.

### C. Claimed Revocation of *Faretta* Right

Alternatively, appellant contends the trial court improperly revoked his *Faretta* right to represent himself.

7

Although defendants have a Sixth Amendment right to be represented by counsel at all critical stages of a criminal proceeding, defendants may choose to waive that right and represent themselves. (*Faretta*, *supra*, 422 U.S. at p. 835.) But it is unclear whether parolees have an analogous right to represent themselves at parole revocation hearings. Because revocation of parole is "not part of a criminal prosecution," several federal circuit courts have concluded the Sixth Amendment right of self-representation is inapplicable at such hearings. (E.g., *United States v. Boultinghouse* (7th Cir. 2015) 784 F.3d 1163, 1165, 1171–1172 [revocation of supervised release]; *United States v. Spangle* (9th Cir. 2010) 626 F.3d 488, 494; *United States v. Hodges* (5th Cir. 2006) 460 F.3d 646, 650.) In California, the Supreme Court has held that the Sixth Amendment right to self-representation "does not extend beyond the point of conviction." (*In re Barnett* (2003) 31 Cal.4th 466, 473 [right of self-representation not applicable in capital habeas corpus proceedings].)

We assume for purposes of argument that the right of self-representation extends to parole revocation hearings and is subject to the same principles applying in criminal proceedings. The principles relevant to this inquiry are as follows: "To invoke the constitutional right to self-representation, a criminal defendant must make an *unequivocal* assertion of that right in a timely manner. [Citation.] 'The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger

8

or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied.' [Citation.] A reviewing court, in determining whether a motion for self-representation is unequivocal, is not bound by the trial court's apparent understanding that the defendant was making a motion for self-representation." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1087.) And even when invoked, the *Faretta* right "may be waived or abandoned" thereafter. (*People v. Dunkle* (2005) 36 Cal.4th 861, 909.) "In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Stanley* (2006) 39 Cal.4th 913, 932.)

In this case, the record does not reflect that appellant ever made an unequivocal request. When discussing the matter at the first hearing, appellant's apparent goal was to rid himself of representation by the public defender and to retain his own counsel. At the outset of the second hearing, he informed the trial court that he preferred to represent himself rather than accept representation by the public defender. But a little later in the hearing, appellant indicated he wanted an attorney, just not the public defender. Still later, appellant said he wanted to represent himself until he hired his own counsel, and the court relieved the public defender. Then at the third hearing, while representing himself, appellant told the court that he did not want to represent himself but that he was doing so because he did not have a lawyer. At the fourth hearing, appellant again stated that he preferred to choose his own lawyer and did not want the public defender, that he wanted the court to appoint a lawyer so he could have two lawyers, and that he would take a court-appointed attorney but not the public defender. Finding appellant's statements about self-representation ambiguous and equivocal, the trial court reappointed the public defender to represent

9

appellant. After the public defender's reappointment, appellant did not renew his request to represent himself, reflecting abandonment of that endeavor. (*People v. Dunkle*, *supra*, 36 Cal.4th at p. 909, and cases cited.)

On this record, we cannot find error on the part of the trial court. Appellant clearly wanted attorney representation, just not representation by the public defender, though he indicated at various points he would rather represent himself than proceed with the public defender. But once the trial court made clear it would not allow additional time for appellant to retain private counsel, and then reappointed the public defender to represent appellant at the parole revocation hearing that it scheduled for the following week, appellant had the choice of going forward with the public defender or representing himself. As the Supreme Court has observed, "[t]here is nothing improper in putting the defendant to this choice." (*People v. Michaels* (2002) 28 Cal.4th 486, 524.) Mindful that we should draw every reasonable inference against waiver of the right to counsel, because appellant did not elect to represent himself once the possibility of retaining counsel was ruled out, we conclude there was no *Faretta* violation.

## DISPOSITION

The judgment is affirmed.

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

RODRÍGUEZ, J.

*People v. Kirgiorgis  (A163156)*

10