**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-1244 |
| *Plaintiff - Appellee,* | D.C. No. 2:95-cr-01094-PA-1 |
| v. | |
| DOUGLAS ELIGHA TAYLOR, | |
| *Defendant - Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted May 14, 2025
Pasadena, California

Filed September 3, 2025

Before: Sandra S. Ikuta, Ryan D. Nelson, and Kenneth K.
Lee, Circuit Judges.

Opinion by Judge Ikuta

# SUMMARY[*]

## Criminal Law

The panel affirmed the sentence imposed upon revocation of Douglas Eligha's Taylor's supervised release.

Taylor argued that the district court committed plain procedural error and imposed a substantively unreasonable sentence.

The panel summarized governing precedent. A district court imposing a modification or revocation of a term of supervised release may not punish the defendant for the original crime of conviction. *Esteras v. United States*, 145 S. Ct. 2031, 2040 (2025). Moreover, a court may not *punish* a defendant who has violated the terms of supervised release by engaging in criminal conduct. *See United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006); *United States v. Simtob*, 485 F.3d 1058, 1062 (9th Cir. 2007). However, the court may consider a violation of criminal law underlying the supervised release violation in its evaluation of the criminal history of the defendant, the risk of recidivism, and the violator's breach of the court's trust.

Applying that precedent, the panel rejected Taylor's arguments that the district court committed plain procedural error. The panel held that the district court adequately explained its reasons for imposing an above-Guidelines sentence upon revocation of supervised release, and sufficiently addressed Taylor's nonfrivolous arguments for

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

a lower sentence. The district court did not improperly punish Taylor for the criminal conduct underlying the revocation by calling Taylor's conduct "egregious." Read in context, the court's statement that Taylor had "engaged in egregious conduct that is a danger not only to himself but to the public" is consistent with 18 U.S.C. § 3553(a)(2)(C), which requires the court to consider the need "to protect the public from further crimes of the defendant." The district court thus properly looked to and considered the conduct underlying the revocation as one of many acts contributing to the severity of Taylor's breach of trust, so as to fully understand his history and risk of recidivism, and did not discuss retribution or punishment for Taylor's violation of the conditions of his supervised release.

The panel rejected Taylor's argument that the degree of the upward variance rendered the revocation sentence substantively unreasonable. Taylor's personal history and characteristics justified an above-Guidelines sentence, and the district court did not rest its sentence on clearly erroneous factual findings.

**COUNSEL**

Rajesh R. Srinivasan (argued), Thi H. Ho, and Sue Bai, Assistant United States Attorneys; Lindsay G. Dotson, Assistant United States Attorney, Chief, Criminal Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Caroline S. Platt (argued), Deputy Federal Public Defender; Cuauhtémoc Ortega, Federal Public Defender; Office of the

Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

---

**OPINION**

IKUTA, Circuit Judge:

Douglas Eligha Taylor was sentenced upon revocation of supervised release to 60 months of imprisonment. We hold that the district court did not commit plain procedural error in sentencing upon revocation of supervised release, and we hold that Taylor's sentence is substantively reasonable. Therefore, we affirm Taylor's sentence.

I

In October 1995, Taylor robbed four banks across Los Angeles (the "underlying criminal offense"). Taylor pleaded guilty to five counts, comprising two counts of bank robbery under 18 U.S.C. § 2113(a) (Counts 1 and 4), two counts of armed bank robbery under § 2113(a), (d) (Counts 2 and 5), and one count of using a firearm during a crime of violence under § 924(c) (Count 3). In April 1996, the district court sentenced Taylor to 147 months of imprisonment for the underlying criminal offense. The court also imposed a five-year term of supervised release for the underlying criminal offense, subject to conditions.

In April 2007, Taylor's term of supervised release began upon his release from prison. In August 2008, Taylor used a handgun to rob a bank. Taylor was prosecuted in state court, and received 17 years of imprisonment in state custody. In December 2018, while still in state custody,

Taylor stabbed another inmate with a knife.  Taylor received four years of imprisonment in state custody for charges arising out of the stabbing, to run consecutively with Taylor's existing 17-year sentence.  From 2016 to 2023, Taylor was cited for 17 rules violations while in state custody, some of which involved violence.

In November 2023, Taylor completed his state term of imprisonment and was transferred to federal custody.  Previously, the United States Probation Office (Probation) had filed a petition for revocation of supervised release, alleging that Taylor's August 2008 conduct violated the conditions of his supervised release.  In December 2023, Probation amended its petition for revocation of supervised release.  Given Taylor's criminal history, Probation calculated a revocation imprisonment range of 18–24 months.[1]  Taylor admitted all allegations in the amended petition.  The district court accepted Taylor's admissions.

In February 2024, upon revoking Taylor's supervised release, the district court sentenced Taylor to an above-Guidelines sentence of 60 months of imprisonment, followed by 24 months of supervised release.[2]  The district court described its findings and reasons, in full, as follows:

> The Court has considered the Chapter 7 policy statements [in the Guidelines] and

---

[1] At that time, Taylor's most serious violation was Grade A, and his criminal history category was III.  Thus, the United States Sentencing Guidelines (Guidelines) provided an applicable range of imprisonment of 18–24 months.  U.S.S.G. § 7B1.4(a).

[2] The sentence comprised 36 months on Count 2 and 24 months on Count 1, to run consecutively, followed by 24 months of supervised release on each of Counts 3 and 4, to run concurrently after the new prison term.

taken those factors into consideration, which includes the fact that the offender has not responded favorably to sanctions or attempted interventions aimed at addressing his shortcomings.

The Court finds the defendant has violated the terms and conditions of supervised release, violated the Court's trust, has violated repeatedly the terms and conditions of supervised release since being placed on supervision, has engaged in egregious conduct that is a danger not only to himself but to the public. He's shown that he's not deterred from future criminal behavior by his previous term of imprisonment or the term of supervised release. And in the Court's view, there's a serious risk of recidivism and a risk of an inability to integrate peacefully back into the community.

Taylor timely appealed from the sentence imposed upon revocation of supervised release.

On appeal, Taylor argues that the district court committed plain procedural error in sentencing him upon revocation of supervised release, and imposing a substantively unreasonable sentence. First, Taylor asserts that the district court failed to give an adequate reason for imposing an above-Guidelines sentence upon revocation, and that it erred in saying that Taylor had violated "repeatedly" the conditions of his supervised release. Second, Taylor contends that the district court failed to address Taylor's nonfrivolous arguments for a lower sentence, including that Taylor struggled during his

incarceration, experienced mental health issues, and had since developed concrete and productive future plans for his post-release life. Third, Taylor argues that the district court improperly considered the seriousness of Taylor's prior state convictions to punish Taylor by calling his conduct "egregious" during its explanation. Finally, Taylor contends that his sentence upon revocation is substantively unreasonable.

## II

We have jurisdiction under 28 U.S.C. § 1291.

We review "all sentencing decisions" under an "abuse of discretion standard," "whether the sentence is inside the Guidelines range or outside of it." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

Because each of Taylor's procedural error claims are "raised for the first time on appeal," we review them "for plain error." *United States v. Rangel*, 697 F.3d 795, 800 (9th Cir. 2012).[3] "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Williams*, 5 F.4th 973, 978 (9th Cir. 2021) (citation omitted). "If these three conditions are met, we may then exercise our discretion to grant relief if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation modified).

---

[3] By contrast, Taylor preserved his substantive claim that an above-Guideline sentence is unreasonable by advocating "for a sentence shorter than the one ultimately imposed." *Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020).

III

A

At sentencing for a criminal offense, a court must consider ten factors set forth in 18 U.S.C. § 3553(a)(1)–(7).[4] Section 3553(a)(2) requires the court to consider "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide

---

[4] Those ten required § 3553(a) factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—[applicable categories of offenses and defendants];
> (5) any pertinent policy statement—[issued by the United States Sentencing Commission in effect on the date of the defendant's sentencing;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2). The court must also consider "the kinds of sentences available." *Id.* § 3553(a)(3). The court "shall state in open court the reasons" for imposing the particular sentence, and if the sentence is "outside the range" of sentences established in the Guidelines, then the court must state "the specific reason" for imposing an out-of-range sentence. *Id.* § 3553(c)(2). In addition to imposing a term of imprisonment, the court may also impose a term of supervised release after imprisonment. *Id.* § 3583(c).

A court may subsequently revoke a term of supervised release, and impose a sentence of imprisonment upon revocation of supervised release, if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *Id.* § 3583(e)(3). Before doing so, the court must consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* § 3583(e). These subsections are the same as the § 3553(a) subsections that the court must consider before imposing a term of imprisonment, with the exception of two subsections. The list of subsections in § 3583(e) does not include § 3553(a)(2)(A), which requires the court to consider "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* § 3553(a)(2), (a)(2)(A). Nor does the list of revocation factors cover § 3553(a)(3), which requires the court to consider "the kinds of sentences available." *Id.*

§ 3553(a)(3).       By   contrast,   the   list   does   include
§ 3553(a)(4)(B) and (a)(5), which require a court to consider
the Guidelines or pertinent policy statements issued by the
United States Sentencing Commission.       *Id.* §§ 3583(e),
3553(a)(4)(B), (a)(5).

## B

    In sentencing, the court commits "significant procedural
error" by "failing to adequately explain the chosen
sentence—including an explanation for any deviation from
the Guidelines range." *Gall v. United States*, 552 U.S. 38,
51 (2007).    The requirement to state "the reasons" for
imposing a particular sentence also applies to sentencing
upon revocation of supervised release. *United States v.
Miqbel*, 444 F.3d 1173, 1178 (9th Cir. 2006).

    "What    constitutes    a    sufficient    explanation    will
necessarily vary depending upon the complexity of the
particular case, whether the sentence chosen is inside or
outside the Guidelines, and the strength and seriousness of
the proffered reasons for imposing a sentence that differs
from the Guidelines range."     *Carty*, 520 F.3d at 992.
"[A]dequate explanation in some cases may also be inferred
from the PSR [the presentence report] or the record as a
whole." *Id.*

## C

    "[W]hen a party raises a specific, nonfrivolous argument
tethered to a relevant § 3553(a) factor in support of a
requested sentence, then the judge should normally explain
why he accepts or rejects the party's position." *Id.* at 992–
93. The requirement to address nonfrivolous arguments also
applies to sentencing upon revocation of supervised release.

*See United States v. Cate*, 971 F.3d 1054, 1059 (9th Cir. 2020).

When a defendant presents nonfrivolous and "fairly extensive" arguments, *United States v. Trujillo*, 713 F.3d 1003, 1009 (9th Cir. 2013), the court errs by "not at all explain[ing] the reasons for rejecting them." *Id.* at 1011. However, the "district court need not tick off each of the § 3553(a) factors to show that it has considered them," as "[w]e assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors." *Carty*, 520 F.3d at 992. For arguments that are "straight-forward and uncomplicated," the district court need not give "explicit reasons" on the record for rejecting the defendant's arguments for a lower sentence. *Id.* at 995.

## D

The Supreme Court has addressed the question whether a district court revoking a term of supervised release may consider the factors listed in § 3553(a)(2)(A) despite that subsection's omission from § 3583(e). *Esteras v United States*, 145 S. Ct. 2031, 2037–38 (2025).

*Esteras* concluded that the court could not address this subsection.[5] *Id.* at 2045. First, *Esteras* reasoned, the plain text of § 3553(a)(2)(A) makes it inapplicable to violations of supervised release. Section 3553(a)(2)(A) "references the need for the sentence 'to reflect the seriousness of the *offense*' and to 'provide just punishment for the *offense*.'" *Id*.

---

[5] *Esteras* also held that a court could not consider § 3553(a)(3) ("the kinds of sentences available"), stating that the reasons for its exclusion were "self-evident." *Id.* at 2039. "When a district court decides whether to revoke a term of supervised release, there is no need to consider 'the kinds of sentences available,' because supervised release is the only matter at issue." *Id*.

at 2040 (quoting § 3553(a)(2)(A)).  But, "[i]n the context of a revocation hearing, the 'offense' is the underlying crime of conviction, not the violation of the supervised-release conditions."  *Id.*  Likewise, *Esteras* held that the principle "expressing one item of [an] associated group or series excludes another left unmentioned," indicates that Congress did not intend for courts to consider § 3553(a)(2)(A) or (a)(3) in revoking a term of supervised release.  *Id.* at 2040–41 (citation modified).  Second, the purpose of § 3553(a)(2)(A) is not applicable to a violation of supervised release.  According to the Court, § 3553(a)(2)(A) covers "retribution" for the defendant's underlying criminal offense.  *Id.* at 2041.  Congress's decision to exclude § 3553(a)(2)(A) from the list of factors in § 3583(e) is consistent with supervised release, which is intended to fulfill rehabilitative ends, not retribution.  *Id.*  "[W]hen a defendant violates the conditions of his supervised release, it makes sense that a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution."  *Id.*  Finally, *Esteras* explained that its conclusion was consistent with precedent.  *See id.* at 2044 (first citing *Tapia v. United States*, 564 U.S. 319, 326 (2011); and then citing *Concepcion v. United States*, 597 U.S. 481, 494 (2022)).

Therefore, because § 3553(a)(2)(A) "speaks only to the 'offense,' and 'offense' here can mean only the underlying criminal conviction," *id.* at 2040 n.5, a court may not consider retribution for the underlying criminal conviction in revoking supervised release.

In so concluding, *Esteras* expressly did not address a related issue: whether when revoking a term of supervised release under § 3583(e), a court can consider "retribution *for*

*the violation of the conditions of the supervised release*." *Id.* *Esteras* noted the government's argument that § 3583 allows a district court to consider § 3553(a)(4)(B) and (a)(5), which require the district court to consider certain policy statements issued by the Sentencing Commission. *Id.* The relevant policy statements include Chapter 7 of the Guidelines, which state that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. ch. 7, pt. A, intro 3(b). According to *Esteras*, "[t]he Commission has adopted the view that 'the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision.'" 145 S. Ct. at 2040 n.5 (citing U.S.S.G. ch. 7, pt. A, intro. 3(b) (Nov. 2024)). Rather than address this issue, *Esteras* took "no position on whether this is a permissible consideration." *Id.*

Although *Esteras* left open whether the court can consider the seriousness of a violation of the conditions of supervised release, we have previously addressed whether a court revoking supervised release can consider "the need for the sentence imposed . . . to reflect the seriousness" of the violation. 18 U.S.C. § 3553(a)(2)(A). *See Miqbel*, 444 F.3d at 1182; *United States v. Simtob*, 485 F.3d 1058, 1062 (9th Cir. 2007).

In *Miqbel*, a defendant pleaded guilty to a conspiracy charge and was sentenced to a term of imprisonment and a term of supervised release. 444 F.4th at 1174. After his release from prison, the defendant used illicit drugs in violation of the conditions of his release. *Id.* at 1175. Following a revocation hearing, the court sentenced the defendant above the Guidelines range, based on the Sentencing Commission's Chapter 7 policy statement and to

provide "punishment" to promote respect for the law and provide just punishment for the violation.[6] *Id.* We held that the court failed to provide sufficiently specific reasons for imposing an out-of-Guidelines sentence. *Id.* at 1181. In dicta, we stated that a court could not rely on the factors set forth in § 3553(a)(2)(A), because that subsection was "a factor that Congress deliberately omitted from the list applicable to revocation sentencing." *Id.* at 1182. We held that pursuant to the Chapter 7 policy statements, a court may properly punish a violator for his "breach of trust," but "may not punish him for the criminal conduct underlying the revocation." *Id.*

We clarified this ruling in *Simtob*. In *Simtob*, the defendant claimed that his revocation sentence was unreasonable "because the court relied on the seriousness of the offense underlying the revocation, in contravention of *Miqbel*." 485 F.3d at 1061. Following *Miqbel*, we held that a court may not punish a defendant "for the criminal conduct underlying the revocation" of his supervised release. *Id.* at 1062 (quoting *Miqbel*, 444 F.3d at 1182). Nevertheless, *Miqbel* "did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation." *Id.* Rather, consistent with the Sentencing Commission's Chapter 7 policy statement, the seriousness of the violation underlying the revocation "may be considered to a lesser degree as part of the criminal history of the violator." *Id.* We explained that the violation underlying the revocation has bearing on the likelihood of recidivism of the defendant, because it is a

---

[6]Although the district court referred to "punishment for the offense," the offense at issue was not the underlying crime of conviction, but the violation of the supervised release. *Miqbel*, 444 F.3d at 1175.

"key predictor of a violator's potential for reintroduction into society without relapse." *Id.* Further, the court could consider the nature and severity of the violation of the conditions of supervised release "to punish the violator for the violator's full breach of trust." *Id.* at 1063. "A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command." *Id.* Where there has been a breach of trust, "greater sanctions may be required to deter future criminal activity." *Id.*

In sum, a district court imposing a modification or revocation of a term of supervised release may not punish the defendant for the original crime of conviction. *Esteras*, 145 S. Ct. at 2040. Moreover, a court may not *punish* a defendant who has violated the terms of supervised release by engaging in criminal conduct. *See Miqbel*, 444 F.3d at 1182; *Simtob*, 485 F.3d at 1062. However, the court may consider a violation of criminal law underlying the supervised release violation in its evaluation of the criminal history of the defendant, the risk of recidivism, and the violator's breach of the court's trust.

E

In "determining substantive reasonableness" of a criminal sentence, the court should "consider the totality of the circumstances." *Carty*, 520 F.3d at 993. The requirement for the sentence to be substantively reasonable also applies to sentences imposed upon revocation of supervised release. *See United States v. Spangle*, 626 F.3d 488, 497 (9th Cir. 2010).

For a non-Guidelines sentence, we are to "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 498 (quoting *Gall*, 552 U.S. at 51). "We cannot presume that a sentence is unreasonable only because it falls outside the" Guidelines range. *Id.* A sentence may be substantively unreasonable when the court applies "the Guidelines sentence without considering the defendant-specific facts that made the resulting sentence unreasonable," *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1057 (9th Cir. 2009), or when the court's factual findings were "clearly erroneous," *United States v. Ressam*, 679 F.3d 1069, 1092–93, 1097 (9th Cir. 2012) (en banc).

## IV

## A

Taylor argues that the district court committed plain procedural error in three ways on sentencing upon revocation of supervised release. *See supra*, at 6–7. Those arguments are unavailing.

## 1

First, the district court adequately explained its reasons for imposing an above-Guidelines sentence upon revocation of supervised release. Unlike in *Miqbel*, where the entirety of the district court's explanation for an above-Guidelines sentence was that a Guidelines sentence "would be insufficient to meet the purposes of sentences under these circumstances," 444 F.3d at 1179, the district court here provided "sufficient explanation" tailored to the "complexity of the particular case." *Carty*, 520 F.3d at 992.

Moreover, the district court's adequate explanation may "be inferred from the PSR or the record as a whole," *id.*, as,

in light of the record, the district court's explanation connected to permissible statutory sentencing factors under § 3553(a). First, the court stated that Taylor "violated the Court's trust" and "violated repeatedly the terms and conditions of supervised release since being placed on supervision," which bears on Taylor's "history and characteristics" and the "nature and circumstances of the offense" under § 3553(a)(1). The amended petition set forth those violations, and Taylor admitted to them. Second, the court stated that Taylor "engaged in egregious conduct that is a danger not only to himself but to the public," which bears on the need "to protect the public from further crimes of the defendant" under § 3553(a)(2)(C). The amended petition described the dangerous conduct in which Taylor engaged in August 2008. Third, the court stated that Taylor had not been "deterred from future criminal behavior by his previous term of imprisonment or the term of supervised release," and that he had "not responded favorably to sanctions or attempted interventions aimed at addressing his shortcomings,"[7] which bear on the need for the sentence "to afford adequate deterrence to criminal conduct" under § 3553(a)(2)(B). The record reflects Taylor's prior sanctions and recidivist behavior. Fourth, the court stated that it had "considered the Chapter 7 policy statements," pursuant to § 3553(a)(5).

Taylor contends that the district court plainly erred in stating that Taylor "violated repeatedly the terms and conditions of supervised release since being placed on

---

[7] Though Taylor argues that this conclusion was inaccurate, the record belies that contention. According to Probation, though Taylor "appeared to be making great strides" after his release in April 2007, he "suddenly began a downward spiral" in August 2008, which resulted in criminal behavior.

supervision." Even if that statement were erroneous, it did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings" to warrant vacatur of Taylor's sentence. *Williams*, 5 F.4th at 978 (citations omitted). Rather, the district court's explanation showed ample understanding of Taylor's history.

2

Second, the district court sufficiently addressed Taylor's nonfrivolous arguments for a lower sentence. Though Taylor characterizes his briefing as "lengthy and detailed," his argument to the district court comprised fewer than three complete pages, and it did not require substantial engagement by the district court.

Taylor sought to prevent the district court from relying on his 2018 "incarceration misconduct" in imposing its sentence, as that conduct occurred while Taylor's supervision was tolled.[8] In accordance with Taylor's argument, the district court did not expressly rely on Taylor's December 2018 stabbing incident in imposing its sentence. Rather, the district court's reasons and explanation made no mention of Taylor's 2018 incarceration misconduct. The district court did not commit procedural error through omission.

Taylor also presented the district court evidence regarding his struggles while incarcerated, his mental health treatment, and his productive plans for post-release life.

---

[8] Taylor's term of supervised release was tolled during his time in state custody. *See* 18 U.S.C. § 3624(e) ("A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.").

However, Taylor presented neither "extensive arguments and evidence" concerning his personal characteristics under § 3553(a)(1), nor precedent-backed arguments regarding unwarranted sentencing disparities under § 3553(a)(6). *Contra Trujillo*, 713 F.3d at 1009. Unlike in *Trujillo*, where the district court "did not at all explain the reasons for rejecting" the defendant's well-supported and nonfrivolous arguments, *id.* at 1011, the district court did not procedurally err in considering Taylor's arguments. Rather, the district court noted that it had "received, read, and considered the parties' sentencing memoranda as well as letters received on behalf of" Taylor, and that it found Taylor's own letter "very thoughtful." For "straight-forward and uncomplicated" arguments, such as those Taylor presented before the district court, the district court did not need to give "explicit reasons" for rejecting them on the record to avoid procedural error. *Carty*, 520 F.3d at 995.

3

Third, the district court did not improperly punish Taylor for the criminal conduct underlying the revocation by calling Taylor's conduct "egregious." Rather, the district court acted permissibly under our precedent.

As Taylor recognizes, "*Esteras* does not change the law applicable to this case." Before the district court and on appeal, Taylor did not argue that the district court improperly punished Taylor for the underlying criminal offense (i.e., the October 1995 bank robberies) when sentencing upon revocation of supervised release. We agree that *Esteras* is inapplicable on these facts. 145 S. Ct. at 2040 n.5 (addressing "only whether § 3583(e) precludes the court from considering retribution for the underlying criminal conviction.").

Taylor argues that the district court improperly punished Taylor for his August 2008 conduct under *Miqbel* and *Simtob*, by stating that his conduct was "egregious." We disagree. Unlike in *Miqbel*, 444 F.3d at 1183, the court did not improperly cite § 3553(a)(2)(A) in stating the reasons for its sentence. Rather, the court considered the appropriate factors, including that Taylor had violated the terms and conditions of supervised release, *see* § 3553(a)(1) (requiring the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant"), and that Taylor had not responded to sanctions or attempted interventions, *see id.* § 3553(a)(2)(B) (requiring consideration of "adequate deterrence"). Read in context, the court's statement that Taylor had "engaged in egregious conduct that is a danger not only to himself but to the public" is consistent with § 3553(a)(2)(C), which requires the court to consider the need "to protect the public from further crimes of the defendant." As *Simtob* allows, the district court considered Taylor's criminal history, the "similar[ity] to [Taylor's] past transgressions," and Taylor's "propensity for recidivism and inability to integrate peacefully into a community." 485 F.3d at 1062. Moreover, the court noted that Taylor violated the court's trust and was unable to integrate peacefully back into the community. *See Esteras*, 145 S. Ct. at 2040 n.5 (taking "no position on whether this is a permissible consideration.")

The district court thus "properly look[ed] to and consider[ed] the conduct underlying the revocation as one of many acts contributing to the severity of" Taylor's breach of trust, so as to fully understand Taylor's history and risk of recidivism. *Simtob*, 485 F.3d at 1063. The district court did not discuss retribution or punishment for Taylor's violation of the conditions of his supervised release. *Cf. Miqbel*, 444

F.3d at 1182–83; *Simtob*, 485 F.3d at 1062–63. Thus, the district court did not procedurally err on this ground, much less plainly err.

In sum, the district court did not commit plain procedural error by considering Taylor's circumstances and arguments and imposing a 60-month above-Guidelines sentence at the revocation sentencing hearing.

## B

Finally, Taylor's sentence was not substantively unreasonable. *See Carty*, 520 F.3d at 993. Taylor argues that the "degree of the upward variance" here rendered unreasonable the sentence upon revocation. We disagree.

Taylor's personal "history and characteristics" justified an above-Guidelines sentence. 18 U.S.C. § 3553(a)(1). Unlike in *Amezcua-Vazquez*, 567 F.3d at 1057, the court considered the "defendant-specific facts" in the record that rendered Taylor's sentence reasonable. And, unlike in *Ressam*, 679 F.3d at 1097, the court did not rest its sentence on clearly erroneous factual findings. These same considerations guide our analysis of the substantive reasonableness of a sentence imposed upon revocation of supervised release. *See Spangle*, 626 F.3d at 497.

Here, Taylor's underlying criminal offense (robbing four banks) mirrored Taylor's August 2008 conduct which resulted in the supervised-release violation (robbing another bank). While in state custody, Taylor stabbed another inmate with a knife and received 17 rules violations. These defendant-specific facts amply justify Taylor's above-Guidelines sentence, and Taylor does not contend that any of these facts are clearly erroneous.

V

We affirm Taylor's sentence. The district court did not commit plain procedural error in sentencing upon revocation of supervised release. It adequately explained its reasons for imposing an above-Guidelines sentence, sufficiently addressed Taylor's nonfrivolous arguments for a lower sentence, and properly considered the severity of the criminal conduct underlying Taylor's revocation of supervised release. The district court's sentence was also substantively reasonable.

**AFFIRMED.**